UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DWAYNE SINGLETON,

                               **COMPLAINT**

                     Plaintiff,

     -against-                        **Demand for Trial by Jury**

CITY OF NEW YORK, JOEL TORRES, JOHN OR     ECF Case No.:
JANES DOE 1-10,                         Docket No.:

                     Defendants.

-------------------------------------------------------------------X

      Plaintiff, Dwayne Singleton, by and through the undersigned attorneys, Sim & DePaola,

LLP, for his complaint against the Defendants, CITY OF NEW YORK, JOEL TORRES and

JOHN OR JANE DOE 1-10, individually and officially in their capacities as New York City

police officers, alleges and states as follows:

### PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988 for the violation of his civil rights protected by the Fourth, Sixth and

Fourteenth Amendments, in addition to violations of the Laws and Constitution of the State of

New York.

2.      These claims arose from a May 10, 2019 incident when Defendants, acting under color of

state law, unlawfully stopped, arrested and detained Mr. Singleton without reasonable suspicion

or probable cause to do so. Mr. Singleton was subsequently charged with Menacing in the

Second Degree, Endangering the Welfare of a Child, Menacing in the Third Degree and

Harassment in the Second Degree.

3.      As a result, Mr. Singleton was wrongfully incarcerated for approximately six (6) days. Mr. Singleton was maliciously prosecuted until all charges were unconditionally dismissed against Plaintiff, which constituted a termination of the criminal proceedings in Plaintiff's favor.

4.      The above referenced acts caused Mr. Singleton to be deprived of his liberty, denied the due process of the laws and to sustain various emotional and physical injuries.

5.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court may deem just and proper. At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

6.      Plaintiff timely served a notice of claim upon the City of New York in compliance with Section fifty-e of the New York General Municipal Law (GML § 50-e).

7.      At least thirty (30) days have elapsed since the service of said notice of claim, and adjustment or payment thereof has been neglected or refused.

8.      Plaintiff has complied with the municipal defendant's demand for an examination, pursuant to GML § 50-h, or said demand was untimely made.

9.      This action and associated claims have been timely commenced within one-year-and-ninety-days after the occurrences upon which they are based.

10.     Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, an award of costs and reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper.

**JURISDICTION**

11.     This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 and pursuant to the Laws and Constitution of the State of New York.

12.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

**VENUE**

13.     Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

**PARTIES**

14.     Plaintiff, Mr. Dwayne Singleton ("Mr. Singleton"), is an African-American male, who presently resides in County, City and State of New York.

15.     Defendant, City of New York ("City"), is a municipal corporation duly organized and existing under the laws of the State of New York.

16.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD personnel, including police officers, detectives, investigators, sergeants, lieutenants and other supervisory officers or officials, as well as the individually named NYPD defendants herein.

17.     In addition, at all relevant times herein, defendant, City, was responsible for enforcing the rules or regulations of the NYPD, and for ensuring that the NYPD personnel obey the laws and constitutions of the United States and the State of New York.

18.     Defendant, JOEL TORRES ("TORRES"), was, at all relevant times herein, a police officer, detective or sergeant employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of defendant City. Defendant TORRES was, at all the relevant times herein, a police officer, under Shield No. 26169 and Tax Reg. No. 965571, assigned to the 28th precinct of the NYPD. Defendant TORRES is being sued in his individual and official capacities.

19.     At all relevant times herein, Defendants John or Jane Doe 1 through 10 were police officers, detectives, sergeants, supervisors, policymakers or officials employed by the NYPD or City of New York. At this time, Plaintiff does not know the true names or tax registry numbers of defendants, John or Jane Doe 1 through 10, as such knowledge is within the exclusive possession of defendants.

20.     At all relevant times herein, Defendants John or Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York, or the NYPD. Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

21.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

## **FACTUAL CHARGES**

22.     On May 10, 2019, at approximately 9:00 p.m., in the vicinity of 118 West 125th Street, within the County, City and State of New York, Plaintiff was illegally targeted, because of his

race, religion, national origin, ethnicity or other improper characteristics for adverse police action, by Defendants, including TORRES.

23.     Plaintiff was walking on the street listening to music playing from his phone when he was approached by a group of people one of whom demanded Plaintiff turn off his music. Plaintiff continued walking down the street.

24.     Approximately five (5) minutes afterward, Plaintiff was surrounded by several police vehicles.

25.     Defendants, including TORRES exited the police vehicles with loaded handguns pointed at Plaintiff.

26.     Plaintiff was immediately and violently tackled to the ground by Defendants, including TORRES, without justification and despite the fact that Plaintiff did not pose a physical threat to anyone.

27.     Defendants, including TORRES unlawfully searched Plaintiff.

28.     Defendants, including TORRES did not find a firearm or any other weapon on Plaintiff.

29.     Plaintiff never possessed a firearm or any other weapon.

30.     Despite not finding any weapons on Plaintiff, Defendants, including TORRES, unlawfully arrested Plaintiff by affixing metal handcuffs in an excessively tight fashion, while Plaintiff was on the ground, then violently yanked Plaintiff to his feet by his immobilized arms causing him substantial physical pain.

31.     Defendants, including TORRES, failed to conduct a reasonable investigation as to what had transpired and ignored obvious exculpatory evidence, namely that he had no firearm in his possession.

32.     Due to Defendants, including TORRES, battery of Plaintiff, Plaintiff was transported to Harlem Hospital where he received treatment for bruises and cuts to his arms, legs and body.

33.     Plaintiff was handcuffed throughout his transportation to and treatment at Harlem Hospital Center.

34.     After being discharged from the Harlem Hospital, Plaintiff was transported to the 28th police precinct where he was subject to invasive criminal processing including fingerprinting photographing and bodily searches.

35.     Plaintiff was subsequently transported to the New York County Central Booking where was again subject to invasive criminal processing including fingerprinting photographing and a retina scan.

36.     At his arraignment bail was set at $2,500.

37.     Plaintiff was unable to post bail and was unlawfully incarcerated for a further five (5) days until he was released on his own recognizance on May 16, 2019.

38.     During Plaintiff's unlawful incarceration Plaintiff was subject to assaults and harassment from other inmates.

39.     Plaintiff was compelled to return to court numerous times to fight the false charges levied against him.

40.     Plaintiff was finally vindicated when all charges against him were dismissed upon a motion from the New York County District Attorney's Office on August 16, 2019.

41.     Defendants, arrested and caused a criminal prosecution to be initiated against Plaintiff, because of their desires to use plaintiff's arrest and criminal prosecution to incur additional overtime compensation, benefits and career favor from the superior officers, to avoid adverse consequences associated with failing to meet NYPD departmental arrest quotas, and also to

conceal their egregious violations of proper police procedures and gross misconduct, including their fabrications of non-existent observations, evidence and information.

42.     Defendants engaged in a conspiracy to falsely arrest and maliciously prosecute plaintiff by personally conferring with each other, regarding the fabrication of the aforementioned non-existent evidence and observations, as well the manner and means by which said fabrications would be forwarded to the District Attorney's Office.

43.     Plaintiff asserts that the Defendants who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact with their police officers.

44.     The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

45.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence

and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

46.     The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemin throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

47.     On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

48.     Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD 'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

49.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

50.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

51.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of

marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

52. On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

53. Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came from the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

54.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

55.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without probable cause.

56.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

57.     Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or

deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

58.    Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

59.    Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

60.    Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Defendants TORRES.

61.    Upon information and belief, the individually named defendants have combined to be named as defendants in numerous lawsuits that have accused them of committing violations similar

or identical to those alleged herein, all of which have resulted no disciplinary or corrective action of any kind.

62.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

63.     The aforementioned acts of Defendants, including TORRES directly or proximately resulted in the deprivation or violation of plaintiff's civil rights, as guaranteed and protected by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

64.     As a direct or proximate result of said acts, plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

### FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

65.     The above paragraphs are here incorporated by reference as though fully set forth herein.

66.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

67.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

68.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

69.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

70.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the New York State Constitution and Article II, Section 8, of the New York Civil Rights Law.

71.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

72.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

73.     The above paragraphs are here incorporated by reference as though fully set forth herein.

74.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

75.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

76.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

77.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

78.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

79.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

80.     The above paragraphs are here incorporated by reference as though fully set forth herein.

81.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

82.     Plaintiff was conscious of his confinement.

83.     Plaintiff did not consent to his confinement.

84.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

85.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

86.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

87.     The above paragraphs are here incorporated by reference as though fully set forth herein.

88.     The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

89.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

90.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

91.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Assault and Battery Under
New York State Law

92.     The above paragraphs are here incorporated by reference as though fully set forth herein.

93.     At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

94.     Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent or justification.

95.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

96.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

97.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

98.     The above paragraphs are here incorporated by reference as though fully set forth herein.

99.     The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

100.    Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent.

101.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

102.    The above paragraphs are here incorporated by reference as though fully set forth herein.

103.    Defendants initiated the prosecution against Plaintiff.

104.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution could succeed.

105.   Defendants acted with malice, which, in the absence of probable cause, may be inferred.

106.   The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

107.   Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

108.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

109.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

110.   The above paragraphs are here incorporated by reference as though fully set forth herein.

111.   Defendants initiated the prosecution against Plaintiff.

112.   Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

113.   Defendants acted with malice, which, in the absence of probable cause, may be inferred.

114.   The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

115.   Accordingly, Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights.

116.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

117.   The above paragraphs are here incorporated by reference as though fully set forth herein.

118.     Defendants arrested, detained and caused a criminal prosecution to be initiated or maintained against Plaintiff to compel the compliance or forbearance of some act.

119.     Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

120.     Defendants intended to inflict substantial harm upon Plaintiff.

121.     Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

122.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

123.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

124.     The above paragraphs are here incorporated by reference as though fully set forth herein.

125.     Defendants arrested, detained and caused a criminal prosecution to be initiated or maintained against Plaintiff to compel the compliance or forbearance of some act.

126.     Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

127.     Defendants intended to inflict substantial harm upon Plaintiff.

128.     Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

129.     Defendants' actions deprived Plaintiff of his constitutional rights to free from illegal searches and seizures and to not be deprived of his liberty without the due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

130.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
### Denial of Right to Fair Trial Under
### New York State Law

131.    The above paragraphs are here incorporated by reference as though fully set forth herein.

132.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision.

133.    Defendants forwarded said false information to prosecutors within the District Attorney's Office.

134.    Defendants' actions resulted in post-arraignment restrictions and deprivations upon plaintiff's liberty and freedom of movement.

135.    Accordingly, defendants deprived plaintiff of his civil rights, pursuant to Article I, Sections 1, 2, 6 & 9, of the New York State Constitution, as well Article II, Sections 10 & 12, of the New York Civil Rights Law.

136.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

137.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
### Denial of Right to Fair Trial Under
### 42 U.S.C. § 1983 Against Individual Defendants

138.    The above paragraphs are here incorporated by reference as though fully set forth herein.

139.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision.

140.    Defendants forwarded said false information to prosecutors within the District Attorney's Office.

141.    Defendants' actions resulted in post-arraignment restrictions and deprivations upon plaintiff's liberty and freedom of movement.

142.    Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Fifth, Sixth and Fourteenth Amendments to United States Constitution.

143.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Biased Based Profiling under
New York City Law

144.    The above paragraphs are here incorporated by reference as though fully set forth herein.

145.    Defendants impermissibly relied upon Plaintiff's actual or perceived race, color, national origin, ancestry, citizenship status, gender, religion, religious practice, age, disability or sexual orientation, as the determinative factor in initiating law enforcement action against Plaintiff, rather than Plaintiff's behavior or other information or circumstances that would link Plaintiff to suspected unlawful activity.

146.    Accordingly, defendants violated plaintiff's rights, pursuant to the Administrative Code of the City of New York, Section 14-151

147.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

148.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

149.   The above paragraphs are here incorporated by reference as though fully set forth herein.

150.   Plaintiff, as a Hispanic or Latino male, is a member of a racial minority and protected class.

151.   Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation

152.   Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

153.   Defendants' discriminatory treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

154.   Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

155.   Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

156.   Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

157.   Accordingly, defendants violated plaintiff's rights, pursuant to Article I, Section 11, of the New York State Constitution, Article VII, Section 79-N, of the New York Civil Rights Law and Section 296, Paragraph 13, of the New York Human Rights Law.

158.   Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

159.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTHTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

160.    The above paragraphs are here incorporated by reference as though fully set forth herein.

161.    Plaintiff, as a Hispanic or Latino male, is a member of a racial minority and protected class.

162.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity

163.    Defendants engaged in the selective treatment of Plaintiff in comparison to others similarly

situated.

164.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such

as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional

rights, or malicious or bad faith intent to injure Plaintiff.

165.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

166.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with

adverse effects against Plaintiff.

167.    Defendants did not possess a rational basis, excuse or justification for applying any laws or

statutes against Plaintiff.

168.    Accordingly, defendants violated plaintiff's rights, under the Fourteenth Amendment.

169.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

170.    The above paragraphs are here incorporated by reference as though fully set forth herein.

171.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to

engage in protected speech or activities, to be free from unreasonable searches and seizures, to be

afforded a fair trial, to not be deprived of his liberty or property without due process of law, or of

the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

172.     Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

173.     As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

174.     Defendants' conspiracy was motivated by a desire to deprive Plaintiff of his civil rights or because of some racial, otherwise class-based, invidious or discriminatory animus.

175.     The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

176.     Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth, Fifth, Sixth and/or Fourteenth Amendments to the United States Constitution.

177.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
### Failure to Intervene Under
### New York State Law

178.     The above paragraphs are here incorporated by reference as though fully set forth herein.

179.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

180.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

181.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

182.    The above paragraphs are here incorporated by reference as though fully set forth herein.

183.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

184.    Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

185.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

186.    The above paragraphs are here incorporated by reference as though fully set forth.

187.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

188.    Defendant City breached those duties of care.

189.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

190.    Defendant City knew or reasonably should have known of its employees' propensity for committing civil rights violations.

191.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

192.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### TWENTIETH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

193.    The above paragraphs are here incorporated by reference as though fully set forth.

194.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

195.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

196.    Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

197.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

198.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

199.    Defendant City's conduct caused plaintiff to be deprived of his civil rights, as guaranteed by the Constitution of the United States, via the First, Fourth, Fifth, Sixth & Fourteenth Amendments thereto.

200.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)  On the First Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

b)  On the Second Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

c)  On the Third Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

d)  On the Fourth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

e)  On the Fifth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

f)   On the Sixth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

g)   On the Seventh Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

h)   On the Eighth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

i)   On the Ninth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

j)   On the Tenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

k)   On the Eleventh Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

l)   On the Twelfth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

m)  On the Thirteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

n)  On the Fourteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

o)  On the Fifteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

p)  On the Sixteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

q)  On the Seventeenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

r)  On the Eighteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

s)  On the Nineteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

t)  On the Twentieth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

u)  Awarding Plaintiff punitive damages in an amount to be determined by a jury on all causes of action set forth herein;

v)  Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and all applicable state or local laws; together with the costs and disbursements of this action

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Bayside, New York
       January 21, 2021

**SIM & DEPAOLA, LLP**

 s/Sameer Nath_____
Sameer Nath, Esq.
Bar Number: 5403662
Sim & DePaola, LLP
*Attorneys for Mr. Singleton*
4240 Bell Blvd - Ste 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
snath@simdepaola.com